# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TIMOTHY L. CHANDLER** | ) | **CIVIL ACTION NO:  13-cv-2553** |
| | ) | |
| **VERSUS** | ) | **JUDGE MINALDI** |
| | ) | |
| **UNITED STATES OF AMERICA and** | ) | **MAGISTRATE JUDGE KAY** |
| **NATHANIEL B. GREENE, SR.** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF RE-URGED MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ...................................................................................................1

II.     FACTS ....................................................................................................................2

        A.      Duty Status and the *Feres* Doctrine ........................................................2

        B.      Recreational Activity and Recreational Use Immunity ............................5

III.    STANDARD OF REVIEW ....................................................................................6

IV.     LAW AND ARGUMENT ......................................................................................8

        A.      The *Feres* Doctrine Deprives the Court of Subject-Matter
                Jurisdiction Over Chandler's Claims ........................................................8

                1.      Chandler's Claims are Barred Because He was On Duty,
                        On Post, Engaging in a Military Activity ......................................8

                2.      This Case is Well Within Binding Precedent Requiring Dismissal..........11

        B.      The Private Person Analog and Louisiana Recreational Use Statutes
                Deprive the Court of Subject-Matter Jurisdiction Over Chandler's Claims.........15

                1.      Louisiana's Recreational Use Immunity Statutes.....................15

                2.      As Argued by Chandler, this Case Would Still Be Barred
                        by Louisiana's Recreational Use Statutes...................................18

                3.      The Limited Exceptions to Louisiana's Recreational Use
                        Statutes do not Apply...................................................................18

V.      CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

Page(s)

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................................................ 7

*Beaucoudray v. United States*,
490 F.2d 86 (5th Cir. 1974) ..................................................... 9

*Bertoniere v. United States*,
2003 W.L. 21488127 (E.D. La. June 25, 2003) ...................................................15

*Calbillo v. Cavender Oldsmobile, Inc.*,
288 F.3d 721 (5th Cir. 2002) ..................................................... 7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..................................................... 7

*Energy Mgmt. Corp. v. City of Shreveport*,
397 F.3d 297 (5th Cir. 2005) ..................................................... 6

*Feres v. United States*,
340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950) ..................................................... 1, 9, 14

*Gros v. United States*,
232 Fed. Appx. 417 (5th Cir. May 15, 2007) ........................................................... 12, 13, 14

*In re Supreme Beef Processors, Inc.*,
468 F.3d 248 (5th Cir. 2006) ..................................................... 8

*Land v. Dollar*,
330 U.S. 731 (1947) ..................................................... 6

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ..................................................... 7

*Mason v. United States*,
568 F.2d 1135 (5th Cir. 1978) ........................................................... 12, 13 ,14

*Parker v. United States*,
611 F.2d 1007 (5th Cir. 1980) ..................................................... 8-9, 9, 10, 13, 14

*Prejean v. Foster*,
227 F.3d 504 (5th Cir. 2000) ..................................................... 7

*Regan v. Starcraft Marine LLC*,
524 F.3d 627 (5th Cir. 2008) ..................................................... 10, 13, 14

# TABLE OF AUTHORITIES

## Federal Cases (continued)

Page(s)

*Robinson v. TCI/US West Communications*, Inc.,
117 F.3d 900 (5th Cir. 1997) ................................................. 7

*Schoemer v. United States*,
59 F.3d 26 (5th Cir. 1995) ................................................. 9

*Sexson v. Boise Cascade Corp.*,
2013 W.L. 3894106 (W.D. La. July 25 2013) ................................................. 18

*Stanley v. Central Intelligence Agency*,
639 F.2d 1146 (5th Cir. 1981) ................................................. 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................. 6

*Stencel Aero Eng'g Corp. v. United States*,
97 S. Ct. 2054 (1977) ................................................. 15

*United States v. Brown*,
348 U.S. 110, 75 S. Ct. 141, 99 L. Ed. 139 (1954) ................................................. 9

*United States v. Olson*,
546 U.S. 43 (2005) ................................................. 15

*Uptegrove v. United States*,
600 F.2d 1248 (9th Cir. 1979) ................................................. 9

*Warner v. United States*,
720 F.2d 837 (5th Cir. 1983) ................................................. 12, 13, 14

*Watkins v. United States*,
462 F. Supp. 980 (S.D. Ga. 1977), *aff'd*, 587 F.2d 279 (5th Cir. 1979)..................... 12, 13, 14

*Watt v. United States*,
246 F. Supp. 386 (E.D.N.Y. 1965) ................................................. 9

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) ................................................. 7

*Willoughby v. United States ex rel. U.S. Dep't of Army*,
730 F.3d 476 (5th Cir. 2013) ................................................. 8

# TABLE OF AUTHORITIES

## Federal Cases (continued)

**Page(s)**

*Woods ex rel. Woods v. United States*,
    909 F. Supp. 437 (W.D. La. 1995), *aff'd*, 84 F.3d 432 (5th Cir. 1996)................................. 15

*Zoula v. United States*,
    217 F.2d 81 (5th Cir. 1954) ........................................................................... 9, 11, 12, 13, 14

## State Cases

*Benoit v. City of Lake Charles*,
    2005-89 (La. App. 3 Cir. 7/20/05), 907 So.2d 931 .............................................. 18

*Fournerat v. Farm Bureau Ins. Co.*,
    11-1344 (La. App. 1 Cir. 9/21/12), 104 So.3d 76 .......................................... 16, 17

*Keelen v. State, Dep't of Culture, Recreation & Tourism*,
    463 So.2d 1287 (La. 1985) ......................................................................... 16, 17

*Lambert v. State*,
    912 So.2d 426 (La. App. 2 Cir. 2005) .................................................................. 17

*Pratt v. State*,
    408 So.2d 336 (La. App. 3 Cir. 1981) ................................................................. 19

*Richard v. Hall*,
    2003-1488 (La. 4/23/04), 874 So.2d 131 ............................................................ 16

*Richard v. La. Newpack Shrimp Co.*, Inc.,
    11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541 ......................................... 16, 18

*Robinson v. Jefferson Parish Sch. Bd.*,
    08-1224 (La. App. 5 Cir. 04/07/2009), 9 So.3d 1035............................................19

*Van Pelt v. Morgan City Power Boat Ass'n*, Inc.,
    489 So.2d 1346 (La. App. 1 Cir. 1986) ............................................................... 19

*Verdin v. La. Land & Exploration Co.*,
    1996-1815 (La. App. 4 Cir. 3/12/97), 693 So.2d 162 .......................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Statutes & Rules

28 U.S.C. § 1346 ............................................................................................... 1

Fed. R. Civ. P. 12(b)(1) .................................................................................... 8

Fed. R. Civ. P. 12(h)(3) .................................................................................... 7

Fed. R. Civ. P. 56(a) ........................................................................................ 7

Fed. R. Civ. P. 56(c) ........................................................................................ 7

## State Statutes

La. R.S. 9:2791 ................................................................................................ 15

La. R.S. 9:2795 ................................................................... 15-16, 16, 17, 18, 19

La. R.S. 9:2795(A)(1) ...................................................................................... 17

La. R.S. 9:2795(B)(1)(c) .................................................................................. 17

## Other Authorities

Frank L. Maraist  &  Thomas  C. Galligan, Jr., *Louisiana Tort Law,* § 11.5 (1996) ...............16

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| TIMOTHY L. CHANDLER | )   CIVIL ACTION NO:  13-cv-2553 |
| | ) |
| VERSUS | )   JUDGE MINALDI |
| | ) |
| UNITED STATES OF AMERICA and | )   MAGISTRATE JUDGE KAY |
| NATHANIEL B. GREENE, SR. | ) |

MEMORANDUM OF LAW IN SUPPORT OF RE-URGED MOTION TO
DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

I.       INTRODUCTION

On August 27, 2013, Plaintiff, Timothy L. Chandler ("Chandler"), filed a Complaint in

the above referenced matter against the United States of America and Nathaniel B. Greene, Sr.[1]

("Defendants"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, *et seq*.

Defendants' previous motion to dismiss Chandler's Complaint as incident to service pursuant to

*Feres v. United States*, 340 U.S. 135, 146 (1950) was denied.  Defendants re-urge dismissal

because additional discovery confirms that at the time of his alleged injury, Chandler was an

active duty service member who was on duty, on a military installation, participating in unit

training.  Moreover, even if Chandler's characterization of the event as a recreational activity

were correct, his claim would still be barred by both the *Feres* doctrine and Louisiana's

Recreational Use Statutes.

---

[1] As previously noted, Nathaniel B. Greene, Sr. is not a proper party defendant.  (Doc. 11-1, n. 1).

II.     **FACTS**

**A.  Duty Status and the *Feres* Doctrine**

On August 27, 2013, Plaintiff, Timothy L. Chandler, filed a Complaint against the United

States of America and Nathaniel B. Greene, Sr.  In that Complaint, Chandler alleged that on

January 19, 2012, he was injured during a paintball competition on Fort Polk. (Doc. 1, ¶ 6).  On

that date, Chandler was an active duty Soldier in the United States Army and was stationed at

Fort Polk. (Doc. 11-3).  He had recently deployed to Afghanistan with his unit.  (Gvmt Ex. 1,

Deposition of Timothy Chandler, July 28, 2015, p. 19).

The date of Chandler's injury was a duty day for him and his entire unit; initially, the unit

had a mandatory accountability formation in his company area at 0600.  (Gvmt Ex. 1, p. 48).

Chandler was released from physical training and told to return at 0900.  (Gvmt Ex. 1, p. 48).

After their 0900 formation, the Soldiers drove to a range for Warrior Adventure Quest training.

(Gvmt Ex. 1, p. 56).  Once at the range, Chandler was told he could engage in one of several

activities, such as archery, shooting and rock climbing.  (Gvmt Ex. 1, p. 65).  Chandler initially

helped to cook food.  (Gvmt Ex. 1, p. 65).

After forty-five minutes to an hour, Chandler was invited to play paintball.  (Gvmt Ex. 1,

pp. 65-66).  Chandler then proceeded to what he described as "like a baseball dugout . . . with

paintball markers, paint, face mask, air, things like that."  Everybody "geared up," picked teams,

and went out on the field.  Chandler played paintball for about 30 seconds prior to the incident.

(Gvmt Ex. 1, p. 66).  The field had both a sandpit with bunkers and barriers and a wooded area.

The teams took their sides, the referee blew a whistle, and the teams turned towards each other.

(Gvmt Ex. 1, p. 67).  When the whistle blew, Chandler identified a piece of plywood that he

could hide behind.  He ran toward the plywood, tripped, and felt a pain in his knee.  He started

2

bleeding and yelled for a medic.  (Gvmt Ex. 1, p. 68).  Somebody called a cease-fire, and

Soldiers ran to assist Chandler.  (Gvmt Ex. 1, p. 69).

Chandler was taken via ambulance to the Bayne Jones Army Community Hospital on

Fort Polk, where he received treatment.  (Gvmt Ex. 1, p. 74)   After three surgeries and

rehabilitation, Chandler continued to complain of pain and limited range of motion.  Chandler

was medically discharged about six months prior to completion of his initial term of service.

(Gvmt Ex. 1, p. 90).  On the day of the incident, Chandler never saw what injured his knee.  He

initially believed it was a root.  (Gvmt Ex. 1, p. 104).  However, now Chandler believes he

actually fell on a picket with a jagged edge.  (Gvmt Ex. 1, pp. 71-72).

Chandler and his company were at the range as part of Warrior Adventure Quest (WAQ)

training. (Gvmt Ex. 2, Deposition of Captain Kent Gavin, November 17, 2015, pp. 72-73).

WAQ training is required training for soldiers returning from a combat zone such as Iraq or

Afghanistan.  WAQ is designed to facilitate the transition of Soldiers returning from Iraq and

Afghanistan from an intense, stressful combat environment into "home life" or a less stressful

environment.  One of the WAQ goals is to reduce the alarming accidental death rate of returning

combat Soldiers.  WAQ is a high-adventure outdoor recreation program coupled with the Leader

Led After Action Debrief (LLAAD), a debriefing technique developed by Battlemind and the

Army Medical Command.  WAQ is conducted in platoon-level (40 personnel) groups within 120

days of a Soldier's return to their home station unit.  It is considered to be an innovative team

building and training tool with numerous applications within the ARFORGEN (Army Forces

Generation) model.  (Gvmt Ex. 3, Warrior Adventure Quest (WAQ) Program Memorandum of

Instruction (MOI), 9/22/2009).

The Fort Polk Warrior Adventure Quest program manager at the time was Mr. Nathaniel Greene.  (Gvmt Ex. 4, Deposition of Nathaniel Greene, August 17, 2015, p. 14).  Mr. Greene received WAQ training at Fort Carson in 2011.  (Gvmt Ex. 4, p. 18).  He would work with commanders to approve training and then work with their leadership to schedule and coordinate that training.  (Gvmt Ex. 4, p. 19).  Mr. Greene confirmed the training is command-driven, that leaders from the command receive an overview of the leader-led after action debrief concept that they walk through the site the day prior, and a working party from the unit checks out equipment and conducts safety checks.  (Gvmt Ex. 4, pp. 22, 40).  Soldiers from the unit are responsible for referring the games.  Compliance with WAQ guidelines is the command's responsibility, rather than MWR staff's responsibility.  (Gvmt Ex. 4, pp. 40, 43).

Even Chandler himself acknowledged the event was mandatory.  In a letter to Congressman Jo Bonner, Chandler wrote: "The morning of January 19, 2012, I reported for first formation at 0600.  After release from formation *we were ordered* to report to Range 23 Alpha for the Company wide *mandatory* "Fun Day" that was sponsored [by] the post MWR." (emphasis added).  (Gvmt Ex. 5, February 10, 2012 letter to Congressman Jo Bonner).  When asked to clarify his position in a deposition, Chandler declined to assert that he was authorized to leave Range 23 Alpha:

> Q. Is it then your testimony that you were not required to be in attendance on the ord (sic) day following the formation?
>
> A. *No, ma'am*. Like I said, once we had the formation that morning, the guys that were there we went out to the field, we were explained this is a fun day, kind of a chill day, decompress.
> (Gvmt Ex. 1, p. 52) (emphasis added).

Other members of Chandler's military unit confirm Range 23 Alpha was their place of duty.  "[I]t was mandatory, that you had to be there.  There's an accountability formation in the morning.  Participation was expected."  (Gvmt Ex. 6, Deposition of Sgt. Michael T. Perkins,

4

February 21, 2014, p. 15).  Soldiers were only released after a mandatory formation at the end of the day.  (Gvmt Ex. 6, p. 21).

While presence was mandatory, Soldiers were free to decide which activities they wanted to participate in.  (Gvmt Ex. 6, p. 18; Doc. 25-1, Timothy Chandler Affidavit, p. 1).  Civilian clothing was authorized.  (Doc. 25-1, p. 1).  Based on these factors alone, Chandler disputes the training purpose of the day and has continued to mischaracterize this day as a "Family Fun Day," arguing that the event was merely recreational, thereby removing the *Feres* bar to his recovery.

**B. Recreational Activity and Recreational Use Immunity**

Chandler describes Defendants' alleged negligence as the "failure to maintain a *recreational* paintball field firmly under its control."  (Doc. 25, p. 6).  Chandler repeatedly describes the incident as "playing recreational paintball" (Doc. 25, p. 6), "playing recreational civilian paintball" (Doc. 25, p. 6), "take[ing] part in a recreational paintball game" (Doc. 25, p. 15), "playing recreational paintball" (Doc. 25, p. 19) and "participating in purely voluntary and purely recreational activities" (Doc. 25, p. 20).  Attendees did not have to pay for the activities offered to them, including paintball.  (Gvmt Ex. 6, p. 18).

The paintball facility, though used for unit training on the day of the incident, is part of the Army Morale, Welfare, and Recreation (MWR) program.  The objectives of the Army MWR program are to:  (1) support combat readiness and effectiveness; (2) support recruitment and retention of quality personnel; (3) provide leisure activities to authorized personnel; (4) promote and maintain the mental and physical wellbeing of authorized personnel; (5) foster community pride, Soldier morale, and Family wellness and promote unit esprit de corps; (6) and ease the impact of unique aspects of military life, such as frequent relocations and deployment.  (Army

Regulation 215-1(hereinafter "AR 215-1").  (Gvmt Ex. 7, Excerpts of AR 215-1, ¶ 1-10).
Notably absent in this list of objectives is any intent to make a commercial profit.

On the contrary, Army MWR programs cannot generate enough income to cover their
operating costs, so they rely in part on appropriated funds.  (Gvmt Ex. 7, ¶¶ 3-7 to 3-9).  Army
MWR programs are divided into three funding categories:  Category A programs generate little
to no non-appropriated fund income and are supported almost entirely by appropriated funds;
Category B programs generate more revenue than Category A programs, but nonetheless cannot
be sustained without "substantial" appropriated fund support; and Category C programs typically
generate enough income to cover most of their operating expenses but nonetheless cannot sustain
themselves based purely on their own revenue and must receive limited appropriated funds.  (*Id.*)

Consequently, no matter the program, revenue may defray operating costs, but none are
intended for commercial profit.  The intent of any user fees is to defray operating costs and to
sustain Army MWR programs.  (Gvmt Ex. 7, ¶ 12-8).  Any funds that are generated must be
used to benefit the patrons who generate them.

III.     **STANDARD OF REVIEW**

Federal courts must decide whether they have jurisdiction before considering the merits
of a case.  *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 (5th Cir. 2005).  "The
requirement that jurisdiction be established as a threshold matter springs from the nature and
limits of the judicial power of the United States and is inflexible and without exception."  *Steel
Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal quotation marks and
citation omitted).  Where subject-matter jurisdiction is being challenged, the trial court is free to
weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to
hear the case.  *Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947). "A court may base its

disposition of a motion to dismiss for lack of subject-matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).  The existence of subject-matter jurisdiction is a question of law subject to de novo review, but the court's determination of any disputed facts is reviewed under a clearly erroneous standard.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  A court must dismiss an action at any time that it determines it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the moving party has met its Rule 56(c) burden, the non-movant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In

deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* at 725.

### IV.   LAW AND ARGUMENT

"The Constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (en banc).  Unless immunity has been waived, courts lack subject-matter jurisdiction. *Willoughby v. United States ex rel. U.S. Dep't of Army*, 730 F.3d 476, 479 (5th Cir. 2013) (per curiam).  The FTCA grants federal courts jurisdiction over certain claims for which the United States has waived its sovereign immunity, but only subject to strict limitations. *Supreme Beef*, 468 F.3d at 252.  The limitations on the FTCA most relevant in this case are the *Feres* doctrine and the private person analog.

### A.  The *Feres* Doctrine Deprives the Court of Subject-Matter Jurisdiction Over Chandler's Claims.

Extensive additional discovery conducted since the initial motion to dismiss was filed in this matter confirms Chandler's claims are barred as incident to service.  Therefore, dismissal under Fed. R. Civ. P. 12(b)(1) is proper.  *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("since a defense based on the Feres doctrine is premised on the notion that there is no jurisdiction to hear the claim..., such defenses should be raised by a motion to dismiss for lack of subject-matter jurisdiction rather than by a motion for summary judgment").

### 1.  Chandler's Claims are Barred Because He was On Duty, On Post, Engaging in a Military Activity.

The Fifth Circuit applies the so-called *Parker* factors to determine whether a plaintiff's injuries are barred as incident to service:

> We examine the totality of the circumstances to determine whether a serviceman's injury was incident to military service. *Parker v. United States*, 611 F.2d 1007,

1013 (5th Cir. 1980). In particular, we consider: (1) the serviceman's duty status; (2) the site of his injury; and (3) the activity he was performing.

*Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir. 1995).

Duty status is a continuum from active duty and on duty to furlough and leave:

If an individual has been discharged from the service, his activities are normally not "incident to service." *See United States v. Brown*, 348 U.S. 110, 75 S. Ct. 141, 99 L. Ed. 139 (1954); *Watt v. United States*, 246 F. Supp. 386 (E.D.N.Y. 1965). At the other extreme, one who is on active duty and on duty for the day is acting "incident to service." *Beaucoudray v. United States*, 490 F.2d 86 (5th Cir. 1974). Between these extremes are degrees of active duty status ranging from furlough or leave to *mere release from the day's chores*. One on furlough or leave, as in *Brooks*, normally has an FTCA action. *But see Uptegrove v. United States*, 600 F.2d 1248 (9th Cir. 1979). *One with only an unexercised right to a pass or who is only off duty for the day usually is held to be acting "incident to service." E.g., Feres v. United States*, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954) (unexercised right to pass).

*Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir. 1980) (Emphasis added).

Chandler's status at the time of his injury is simple: he was on duty.  As discussed above, Chandler acknowledged as much to his congressman when he wrote:  "The morning of January 19, 2012, I reported for first formation at 0600.  After release from formation *we were ordered* to report to Range 23 Alpha for the *Company wide mandatory* "Fun Day" that was sponsored [by] the post MWR."  (emphasis added).  (Gvmt Ex. 5).  By his own admission, the event was mandatory and Chandler was ordered to attend.  And when given the opportunity to clarify this description in his deposition, Chandler refused to say he was allowed to leave Range 23 Alpha. This conforms to all of the evidence offered by other personnel.

In a previous motion, Chandler attempted to slide down the duty continuum by arguing that he was not given "orders, instructions, or even suggestions from military personnel as to what he should do." (Doc. 34, p. 4).  First, this is inaccurate – as discussed, Chandler was given the order to attend, and he was told what he could do once he arrived.  Second, this argument conflates duty and activity– what he is doing is a question of activity, but the fact that he is

9

required to be there is one of duty.  Third, even if this court attempted to recognize some sort of lesser duty status, it would still consist of being ordered by the command to be at a given place with the rest of one's unit, on a duty day.  This is a far cry from furlough, leave, off-duty, or even released for the day.  As discussed below, authoritative case law requires dismissal even where the service member has been released for the day.

The second factor in the *Parker* test is location.  Chandler's location is equally straightforward:  Chandler was on Range 23 Alpha, on Fort Polk, at the time of his injury.  Chandler previously argued that he was at the same MWR facility discussed in *Regan v. Starcraft Marine LLC*, 524 F.3d 627 (5th Cir. 2008), but this is incorrect.  (Doc. 25, p. 18).  The accident in *Regan* took place at a recreational facility forty-five miles from Fort Polk, Louisiana.  *Regan* at 629.  The *Regan* court very much distinguished the two, stating of the forty-five mile away facility that "there was much less military control there *than is exerted at Fort Polk*."  *Id.* at 640.  In other words, the *Regan* court very much emphasized whether the location was on Fort Polk.

The third factor of the *Parker* test is the activity being performed, which is to be examined "to see if it served some military function."  *Regan v. Starcraft Marine LLC*, 524 F.3d 627 (5th Cir. 2008) (citing *Parker* at 1014).  Defendants' position here has been extensively briefed: Chandler was engaged in Warrior Adventure Quest (WAQ) training, an Army developed program implemented and tasked to Fort Polk commanders by Major Army Command direction.  As previously discussed, WAQ is an Army-wide program intended to train Soldiers on alternative behaviors to reduce accidental injuries and deaths of re-deployed Soldiers.  WAQ serves a strong military function.

10

Despite extensive discovery regarding the rigor with which WAQ training was implemented, and on the manner in which WAQ training was combined with a family "fun day," Chandler has not produced any evidence that the paintball game was not part of the WAQ program.  On the contrary, the Officer in Charge (Captain Gavin), the Warrior Adventure Quest Program Manager (Nathaniel Greene), and a noncommissioned officer (Sgt. Perkins) from Chandler's platoon all confirmed that the paintball game was in fact part of WAQ training.  Whether individual Soldiers were required to participate in any one activity that day does not change the intent of the training.

But even if Chandler's characterization of the day in question as a family fun day told the whole story, an argument that is contradicted by the evidence, it would still serve morale and comradery purposes.  This was not a weekend barbeque and paintball game organized among friends, but an entire company event organized by unit leadership and held during duty hours.  The military paid for the food, provided the games free of charge, and required attendance.  Even if the event were a family fun day, it was not a personal affair.  Whether this was mandatory WAQ training or a purely recreational activity, Chandler was on duty, on post, participating in a unit-sponsored event, and his claim is *Feres*-barred.

### 2.   This Case is Well Within Binding Precedent Requiring Dismissal.

A long line of cases shows that, even if Chandler had been released for the day and was attending to completely personal matters on post, his claims must be dismissed.  Clearly then, under the actual facts of this case, Chandler's claims lack subject-matter jurisdiction.

In *Zoula v. United States*, *supra*, the Fifth Circuit held that two plaintiffs who had been issued Saturday passes (but had not picked them up) were barred from recovering when they were involved in a vehicle accident on post.  They were in civilian clothes and driving in a privately owned vehicle when they were struck by a government ambulance.  *Id*.

11

The Fifth Circuit moved farther down the continuum and still barred recovery in *Mason v. United States*, 568 F.2d 1135, 1135 (5th Cir. 1978).  In *Mason*, a seaman who was on active duty had been released for the day and was tending to personal business on a military installation on his way home.  In dismissing plaintiff's case, the Court stated that:  "Since Mason was both on active duty status and on the premises of the Naval Air Station at the time of the accident, he was engaged in activity incident to service. That he had been relieved from his routine duties is not determinative."  *Id.* at 1136.

The Fifth Circuit affirmed the reasoning of *Zoula* and *Mason* in *Watkins v. United States*, 462 F. Supp. 980, 986-89 (S.D. Ga. 1977), *aff'd*, 587 F.2d 279 (5th Cir. 1979).  The *Watkins* plaintiff had been released for the day and was on his way home from softball practice when he was involved in a motor vehicle collision with a military vehicle on post.  The Fifth Circuit affirmed the district court's determination that this injury was incident to service.  *Id.*

The Fifth Circuit confirmed yet again in *Warner v. United States*, 720 F.2d 837, 838 (5th Cir. 1983) that release for the day to attend to personal matters is no bar.  The *Warner* plaintiff was released for the day before noon.  He left the military installation and was repairing a vehicle at his friend's house.  He drove back onto the installation to purchase automotive parts but was injured in a vehicle accident with a government vehicle before he reached the store.  *Id.*

Finally, the Fifth Circuit affirmed this rule as recently as 2007 in *Gros v. United States*, 232 Fed. Appx. 417 (5th Cir. May 15, 2007).  In *Gros*, a service member was barred from recovering for exposure to toxic chemicals while showering or drinking water in his on-post home.  *Id.*  Thus, even repeated exposure in a residence while attending to personal matters, presumably before and after work and on weekends was barred by the *Feres* doctrine.

The above five cases are clear that even if a service member has been released for the day and is attending to completely personal matters, recovery is barred if the injury occurred on post. Thus, even if Chandler had been released (though by his own admission, he was not), and he was playing paintball on his own (instead of at a mandatory company function organized by his command), recovery would be barred.

The closest Fifth Circuit cases that reached the opposite conclusion, *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980) and *Regan v. Starcraft Marine LLC*, *supra*, are readily distinguishable.  In *Parker*, the plaintiff had been granted a four-day pass and was on his way home in a civilian vehicle when he was involved in a vehicle accident with a military vehicle. *Parker* at 1008.  In holding that Parker's injury was not incident to service, the court took care to distinguish *Zoula*, *Mason*, and *Watkins*:

> Parker had requested and received the right to be absent from his regular duties for four days and five nights. Parker did more than the claimants in *Zoula*, who had merely the unexercised right to a pass. 217 F.2d at 82-83. Parker's status was more like a pass or furlough than those in *Mason* or *Watkins*, in which the plaintiffs were merely off duty for the day. *Mason v. United States*, 568 F.2d 1135 (5th Cir. 1978); *Watkins v. United States*, 462 F. Supp. 980, 986-89 (S.D. Ga. 1977), *aff'd per curium*, 587 F.2d 279 (5th Cir. 1979). While Parker technically might not have been on a "furlough" or "pass," his exercised right to be absent for four days was actually more like a furlough than mere release from the day's duties.

*Parker* at 1013-14.  The court deliberately distinguished, rather than overruled, the cases cited above.  Thus, the interaction between *Parker* and previous cases is just that a four-day pass is enough to treat a service member as off duty.  It does not change the rule that anything on the continuum between duty and release for the day is not.  Importantly, the Fifth Circuit decided *Warner* and *Gros* after *Parker*, proving the rule established in earlier cases was not overruled.

Similarly, *Regan v. Starcraft Marine LLC*, *supra,* does not overrule *Zoula*, *Mason*, *Watkins*, *Warner*, or *Gros*.  *Regan* involves an accident with eight people on a pontoon boat at a

recreational facility forty-five miles from Fort Polk, Louisiana.  *Regan* at 629.  The incident occurred on a Saturday.  *Id*.  Regarding duty status, the court noted that "Regan needed neither a pass nor leave because he had no military duties on the days he was involved in this recreation" and that this was basically equivalent to leave or pass "without undertaking the formality of the leave and pass paperwork."  *Id.* at 638-39.  Regarding location:  "It was unclear to the district court and also [to the Fifth Circuit] whether the accident occurred outside [a] small cove [owned and controlled by the United States]," but the court determined "there was much less military control there [forty-five miles away] *than is exerted at Fort Polk*."  *Id.* at 640.

*Regan* therefore required two deviations from the long line of *Feres*-barred cases cited above:  The Fifth Circuit determined the plaintiff's duty status was much more like leave than simply being released from or off-duty for the day; and the location, forty-five miles from the main installation, was not like being on Fort Polk proper.  The Court acknowledged that, even where the plaintiff was off duty, forty-five miles from the main installation, and partaking in a completely private activity with friends, it was "a very close question[.]"  *Regan* at 637.

As in *Parker*, the Court's detailed findings clearly distinguish the case from *Zoula*, *Mason*, *Watkins*, *Warner*, or *Gros*, all of which are still good law and simple to apply.  Even if Chandler had been released for the day and was attending to private affairs, his duty status combined with the location would have implicated *Feres*.  Clearly then, where he was ordered to attend a mandatory unit function on post during the workday, his claim is barred.  This would be true even if the event were recreational and was completely unrelated to WAQ.

Although Chandler's tort claim should be barred under *Feres*, he has another remedy for an allegedly service-connected injury.  As the Supreme Court has noted, the Veterans' Benefits Act "provides a swift, efficient remedy for the injured serviceman" even as the *Feres* doctrine

bars recovery.  *Stencel Aero Eng'g Corp. v. United States*, 97 S. Ct. 2054, 2058 (1977).

Chandler has a remedy, just not under the FTCA.

**B.  The Private Person Analog and Louisiana Recreational Use Statutes Deprive the Court of Subject-Matter Jurisdiction Over Chandler's Claims.**

The wavier of sovereign immunity in the FTCA is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  According to the Supreme Court, "these words mean what they say," that sovereign immunity is only waived "where local law would make a *private person*" liable in tort."  *United States v. Olson*, 546 U.S. 43, 44 (2005) (emphasis in the original).

As discussed more fully below, Louisiana's Recreational Use Statutes immunize private landowners under similar circumstances.  This court has expressly applied the private person analog requirement to conclude that it lacks subject-matter jurisdiction over an FTCA complaint where a private person would be immunized by Louisiana's Recreational Use Statutes.  *Woods ex rel. Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La. 1995), *aff'd*, 84 F.3d 432 (5th Cir. 1996).  Other courts have applied a summary judgment standard to application of Louisiana's Recreational Use Statutes in FTCA cases.  *See e.g. Bertoniere v. United States*, 2003 W.L. 21488127 (E.D. La. June 25, 2003) (denying rehearing where summary judgment had been granted, though the court cites *Woods* and uses jurisdictional language).

Thus, even if Chandler were correct in arguing that his injury arose not out of military training, but instead out of recreational activity, his case would still be barred.

**1.  Louisiana's Recreational Use Immunity Statutes**

Louisiana limits landowners' liability for injury arising out of recreational use on their land through two main statutes, La. R.S. 9:2791 and La. R.S. 9:2795 (the "Recreational

Use Statutes"). The Recreational Use Statutes are designed to encourage landowners to open their lands on a basically nonprofit basis for recreational use. *Richard v. Hall,* 2003-1488 (La. 4/23/04), 874 So.2d 131, 147; citing, Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law,* § 11.5 (1996). The statutes limit landowners' liability for injury occurring when their property is being used for a "recreational purpose." *Richard v. La. Newpack Shrimp Co., Inc.,* 11- 309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541, 546-547. The Louisiana Legislature intends for the Recreational Use Statutes to be read broadly. *Verdin v. La. Land & Exploration Co.,* 1996-1815 (La. App. 4 Cir. 3/12/97), 693 So.2d 162, 170 n. 6 (acknowledging amendments to the Recreational Use Statutes evidence broad intent).

The Recreational Use Statutes relate to the same subject-matter and should be read together. *Keelen v. State, Dep't of Culture, Recreation and Tourism,* 463 So.2d 1287, 1289 (La. 1985); *Fournerat v. Farm Bureau Ins. Co.,* 11-1344 (La. App. 1 Cir. 9/21/12), 104 So.3d 76, 80-81. As between the two statutes, La. R.S. 9:2795, applicable to this matter, controls. *Richard v. Hall,* 874 So.2d 131, 151 (La. 2004).

La. R.S. 9:2795, entitled *Limitation of liability of landowner of property used for recreational purposes*, reads in pertinent part:

> B.(l) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
> (a) Extend any assurance that the premises are safe for any purposes.
> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
> (c) Incur liability for any injury to person or property incurred by such person.

La. R.S. 9:2795 also contains the following definitional provisions:

A. As used in this Section:
    (a) 'Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
    (b) 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
    (c) 'Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, nature study, water skiing, ice skating, sledding, snowmobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
    (d) 'Charge' means the admission price or fee asked in return for permission to use lands.
    (e) 'Person' means individuals regardless of age.

Historically, the Recreational Use Statutes provided much narrower immunity than they currently do.  The Supreme Court of Louisiana interpreted older versions of these statutes to require the following three-part test to determine whether immunity applied:  (1) the injury had to occur on "undeveloped, non-residential, and rural or semi-rural" land; (2) the injury had to be "the result of recreation that can be pursued in the 'true outdoors'"; and (3) the instrumentality that caused the injury had to be "of the type normally encountered in the 'true outdoors' and not 'of the type usually found in someone's backyard.'"  *Fournerat v. Farm Bureau Ins. Co.*, *supra*, (quoting *Keelen*, 463 So.2d at 1290).  Subsequent amendments have significantly broadened the grant of immunity, to expressly include both urban and rural lands (La. R.S. 9:2795(A)(1)) and to cover defects in land that are both naturally occurring and man-made (La. R.S. 9:2795(B)(1)(c)).  New activities have also been added to the illustrative list in La. R.S. 9:2795(A)(1).  Louisiana courts therefore no longer apply the first and third prongs of the *Keelen* test.  *Fournerat*, *supra*;  *Lambert v. State*, 912 So.2d 426, 430 (La. App. 2 Cir. 2005).

**2.  As Argued by Chandler, this Case Would Still Be Barred by Louisiana's Recreational Use Statutes.**

Chandler alleges he was playing paintball on a field owned by the United States when he fell on a picket with a jagged edge.  By Chandler's own – and repeated – characterization, the paintball game had a recreational purpose, causing his injury to fall under the immunity granted by La. R.S. 9:2795.

Since La. R.S. 9:2795 was last amended in 2001, courts have repeatedly acknowledged it covers a broad spectrum of sporting events.  In *Benoit v. City of Lake Charles*, 2005-89 (La. App. 3 Cir. 7/20/05), 907 So.2d 931, the Louisiana Third Circuit applied the statute to grant immunity for an injury arising out of a youth baseball tournament.  In *Sexson v. Boise Cascade Corp.*, this Court applied the statute to grant immunity for an injury arising out of a high school cross country meet.  *Sexson v. Boise Cascade Corp.*, 2013 W.L. 3894106 (W.D. La. July 25, 2013).

For purposes of recreational use immunity, a paintball game is no different than a baseball game or cross country meet.  Like the baseball game and cross country meet in the cases above, the instant paintball game was a team competition played outdoors.  Like a cross country meet, the paintball game was intended to be played outdoors over natural terrain.  Not that either constraint is necessary – the statute, as most recently amended, is broad enough to cover indoor and outdoor events and a whole host of other recreational activities.  Even then, the list was not meant to be exhaustive.  *Richard v. La. Newpack Shrimp Co., Inc.*, *supra*.

**3.  The Limited Exceptions to Louisiana's Recreational Use Statutes do not Apply.**

One exception to the immunity statute involves a "willful or malicious failure to warn against a dangerous condition[.]"  Chandler never alleged, nor do the facts suggest, willful or malicious failure to warn.

18

A second exception to the immunity statute involves commercial enterprises.  First, on the day in question, paintball and other activities were provided to attendees free of charge. Second, this exception requires much more than a showing that fees were paid, as La. R.S. 9:2795 expressly provides immunity to landowners who permit use "with or without charge[.]" *Van Pelt v. Morgan City Power Boat Ass'n, Inc.*, 489 So.2d 1346 (La. App. 1 Cir. 1986); *Pratt v. State*, 408 So.2d 336 (La. App. 3 Cir. 1981) (finding that a state reservoir and recreational area was not a "commercial enterprise, despite fee collection, because it was intended to be a non-profit enterprise."); *Robinson v. Jefferson Parish Sch. Bd.*, 08-1224 (La. App. 5 Cir. 04/07/2009), 9 So.3d 1035 (finding a 123-acre conference center was not a commercial enterprise because it operated at a loss and was heavily subsidized by the executive board of its parent organization). Rather, a commercial recreational development or facility is one for which profit is "a primary objective of the venture[.]"  *Pratt* at 342.

Here, profit is not a primary objective of Army MWR.  As discussed above, Army Regulation 215-1 provides multiple objectives for the Army MWR program, including readiness; recruitment and retention; provision of leisure activities; mental and physical wellbeing; community pride; Soldier morale; Family wellness; esprit de corps; and minimization of the impact of frequent relocations and deployment.  Profit is not one of these objectives.  In fact, as discussed above, Army MWR programs rely, in part, on appropriated funds because they cannot generate enough income to cover their operating costs.  In other words, they operate at a loss, just like the conference center in *Robinson*.

For all of these reasons, neither the malicious failure to warn or commercial enterprise exceptions to La. R.S. 9:2795 apply.  As long as Chandler insists his injury occurred during a

recreational activity rather than during military training, his claim should be barred by Louisiana's Recreational Use Statutes.

## V.     **CONCLUSION**

After extensive discovery, Chandler has proven only that he was on duty, on post, and required to be at a unit function when he was injured.  Fifth Circuit precedent requires dismissal of such a claim.  But even if Chandler could change the law and the facts, his argument would be that this was merely a voluntary recreational activity and such a claim would be barred by Louisiana's Recreational Use Statutes.  Chandler cannot have it both ways: either his injury was incident to service, or it was purely recreational, but either way, his complaint must be dismissed.

> Respectfully submitted,
>
> STEPHANIE A. FINLEY
> United States Attorney
>
> BY:     _s/Jennifer B. Frederick_____
> JENNIFER B. FREDERICK (#23633)
> Assistant United States Attorney
> 800 Lafayette Street, Suite 2200
> Lafayette, Louisiana 70501
> Telephone:     (337) 262-6618
> Facsimile:      (337) 262-6693
> Email:          jennifer.frederick@usdoj.gov