UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TIMOTHY L. CHANDLER** | * | **CIVIL ACTION NO. 2:13 -CV-02553** |
| | * | |
| **v.** | * | |
| | * | **JUDGE SUSIE MORGAN** |
| **UNITED STATES OF AMERICA, ET AL.** | * | |
| | * | |
| | * | **MAGISTRATE JUDGE KAY** |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM RULING

Before the court is a Motion to Dismiss[1] (Rec. Doc. 70) filed by the defendants, the United States of America ("the government") and Nathaniel Greene, Sr. The plaintiff Timothy Chandler filed a Motion for Hearing (Rec. Doc. 76). For the following reasons, the Motion to Dismiss (Rec. Doc. 70) will be **GRANTED**, and the Motion for Hearing (Rec. Doc. 76) will be **DENIED AS MOOT.**

### I. FACTS & PROCEDURAL HISTORY

Chandler was an E4 specialist in the United States Army who was stationed at Fort Polk after returning from his deployment in Afghanistan. (Rec. Doc. 74-11). At Fort Polk, he and his unit went through Warrior Adventure Quest (WAQ) training. This training is designed to help returning soldiers transition from combat environments into "home life." (Rec. Doc. 70-6). On Thursday, January 19, 2012, in line with this transition training program, Chandler and his unit were required to participate in a mandatory "fun day" at the base's Morale Welfare & Recreation (MWR) facility. The United States owns and operates the MWR facility, and Nathaniel Greene, Sr., a civilian, maintains it. (Rec. Doc. 74-4 at p. 1, ¶¶ 1-2). The day was mandatory for the

---

[1] The defendants also characterized the motion as a Motion for Summary Judgment in the alternative.

attending soldiers who were required to report before the event and were only released after a mandatory formation at the end of the day. (Rec. Docs. 70-9, 74-6). The officer-in-charge of the event was responsible for ensuring "100 percent accountability of all soldiers…as well as…administer[ing] safety." (Rec. Doc. 70-5 at p. 3). This included a walk-through of the facility before the event. (Rec. Doc. 74-6 at p. 10). Civilian family members and friends were also invited to the fun day.

On that Thursday, the soldiers reported for a mandatory accountability formation at 6:00 A.M., and the soldiers were released from physical training. The commanding officer instructed them to report back at 9:00 A.M., so that the unit could go to the MWR facility for the fun day. (Rec. Doc. 70-4 at p. 5). During the fun day, the soldiers were allowed to wear civilian clothes, and they were free to choose from several recreational activities, such as archery, paintball, rock climbing, and grilling. The plaintiff was invited to join a paintball game that consisted of both civilians and soldiers. During the paintball game, Chandler injured his knee on an object protruding from the ground.

Chandler filed suit against the government and Greene under the Federal Torts Claim Act (FTCA), arguing that his knee injury was caused by the defendants' negligence. (Rec. Doc. 1). Shortly after, the government moved to dismiss the suit, arguing that the court lacked subject matter jurisdiction under the *Feres* doctrine.[2] (Rec. Doc. 11). When the court decided the motion, discovery had been very limited. The court denied the motion to dismiss, by accepting the plaintiff's argument that the injuries arose out of a purely voluntary and recreational activity. (Rec. Doc. 36). The parties conducted discovery for several months, and then, the defendants

---

[2] The *Feres* doctrine bars tort claims against the government that are incident to military service. *Feres v. United States,* 340 U.S. 135, 146 (1950).

filed a re-urged Motion to Dismiss, again arguing that the court does not have subject matter jurisdiction under the *Feres* doctrine. (Rec. Doc. 70). The defendants' Motion to Dismiss also argues that the plaintiff is barred from bringing the claim under Louisiana's Recreational Use Immunity Statutes. Because the court finds that the evidence uncovered through discovery shows that the suit is barred under the *Feres* doctrine, the court does not reach the issue of whether Louisiana's Recreational Use Immunity Statutes apply.

## II. LAW & ANALYSIS

### A. 12(b)(1) Standard

A party can move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When deciding a motion to dismiss a case for lack of subject matter jurisdiction, the court can consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US W. Commc'ns Inc.,* 117 F.3d 900, 904 (5th Cir. 1997) (citations omitted). Here, because both parties have conducted extensive discovery, the court will decide the 12(b)(1) motion using the complaint and the evidence provided by the defendants and plaintiff.

### B. *Feres* Doctrine

Under the *Feres* doctrine, the government cannot be held liable under the FTCA for injuries that are incident to military service. *Feres v. United States,* 340 U.S. 135, 146 (1950). If the *Feres* doctrine applies, the court does not have subject matter jurisdiction over the case and must dismiss it. *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981). When determining whether the injury is incident to service, the court should consider "whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline." *Regan v. Starcraft Marine, LLC,* 524 F.3d 627, 635 (5th Cir. 2008)

3

(quoting *United States v. Shearer*, 473 U.S. 52, 57 (1985)). "[I]f a claim is based on an injury that was incident to service and if resolving the claim also would demand second-guessing of military judgments," the court should apply the *Feres* doctrine and bar suit. *Id.* at 636. Keeping this guiding principle in mind, the Fifth Circuit analyzes three factors to determine whether *Feres* is applicable: (1) the duty status of the service member, (2) the site where the injury occurred, and (3) the nature of the activity performed by the service member at the time of the injury. *Id.* at 637.

### 1. Duty Status

While not dispositive, the first factor, the duty status of the service member, is the most important factor to determine the applicability of the *Feres* doctrine. *Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir. 1995). This factor elucidates the relationship between the service member and the military at the time of the injury, which helps the court to determine "how truly *incident* to service [the injury] was." *Regan,* 524 F.3d at 637 (emphasis in orginal). A service member's duty status falls somewhere on the continuum between active duty and discharge. *See Schoemer*, 59 F.3d at 29. If a service member is on active duty, the *Feres* doctrine likely applies, but if a service member has been discharged, the *Feres* doctrine likely does not apply. *Id.* To determine where an active service member falls on the continuum, the court should not look to whether the service member was subject to discipline by the military, but rather to where the member's "status is on a continuum between performing the tasks of an assigned mission to being on extended leave from duty." *Regan,* 524 F.3d at 637.

The Fifth Circuit has found that if the service member is off-duty and away from his post, the service member's status does not weigh in favor of applying the *Feres* doctrine. *Regan*, 524 F.3d at 637. In *Regan v. Starcraft Marine LLC*, the plaintiff, an active duty soldier, was injured on a recreational boat at a Fort Polk MWR facility that was 45 miles from the military base. *Id.*

4

at 629. Even though he had not completed a formal leave request, the plaintiff was off duty on the date he was injured because a formal leave request was not required when using accumulated off-duty time. *Id.* at 640. The plaintiff voluntarily boarded the pontoon with other off-duty soldiers and civilians. *Id.* at 629. The plaintiff was not required to be present on the boat, and the event was not sponsored by the military. *Id.* at 629-30. *See also Kelly v. Pan. Canal Comm'n*, 26 F.3d 597, 600 (5th Cir. 1994) (finding that when a captain was injured while off duty for the weekend, "his duty status [fell] along the middle of the spectrum and [was] not a strong indicator of whether he was acting incident to service").

On the other hand, a service member "who is on active duty and on duty for the day is acting 'incident to service,'" which weighs in favor of applying the *Feres* doctrine. *Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir. 1980). In *Gros v. United States*, the plaintiff, an active duty service member, "was [allegedly] exposed to toxic chemicals while showering [and] drinking water at his home," during off-duty hours. 232 F. App'x 417, 418 (5th Cir. 2007). Yet the Fifth Circuit determined that because the exposure took place on base and on days that the service member was on duty, his duty status weighed in favor of applying the *Feres* doctrine. *Id.*

Based on the evidence provided by the parties, Chandler's duty status on Thursday, January 19, 2012, weighs in favor of applying the *Feres* doctrine. The plaintiff was on duty the date of the incident, and the plaintiff was complying with his on-duty orders by attending the fun day. *See* (Rec. Docs. 70-4, 70-5,, 70-9). Unlike the plaintiff in *Regan*, Chandler was not off-duty, was not off-base, and was not voluntarily using an MWR facility. *See* 524 F.3d at 629. Therefore, on the duty status continuum, Chandler was closer to "performing the tasks of an assigned mission [rather than] being on extended leave from duty." *Id.* at 637. While reporting to an MWR facility for mandatory relaxation and recreational time may not be a stereotypical on-

5

duty task for a soldier, this task aligns with training that Chandler and his unit were receiving at Fort Polk. The court cannot second-guess the military's reasoning behind requiring soldiers to attend a fun day. This first, most-important factor weighs heavily in favor of dismissing the suit for lack of subject matter jurisdiction.

   2. **Location of Injury**

The second factor that the court considers is where the injury took place. The location on which the court should focus is the physical location of the injury and not the location of where the government allegedly acted negligently. *Id.* at 640 (citing *Kelly*, 26 F.3d at 600). If the injury took place at a location that is owned and controlled by the United States, this would weigh in favor of applying the *Feres* doctrine. *See id*. However, if the injury took place at an off-base MWR facility that was technically owned and controlled by the United States, but on which the government exercised limited military control, the location would weigh against applying the *Feres* doctrine. *See id.* The plaintiff in *Regan* was injured at a Fort Polk MWR facility that was 45 miles off base. *See id.* at 629, 640. The Fifth Circuit found that even though the facility was owned and controlled by the government, because it was so far off base, "there was much less military control there than [was] exerted at Fort Polk." *Id.* at 640. This weighed against applying the *Feres* doctrine.

Like the plaintiff in *Regan*, Chandler was injured a Fort Polk MWR facility. *See id.* at 629. However, unlike the MWR facility at issue in *Regan*, the MWR facility in which Chandler was injured was within the Fort Polk military installation. Additionally, even though both the current MWR facility and the *Regan* MWR facility were managed by civilians, on the day in question, the officer-in-charge of the fun day inspected the on-base MWR facility, including the paintball field, to ensure that the facility was safe. (Rec. Doc. 74-6 at p. 10). The officer-in-charge posted military personnel at each station, and he gave a safety briefing concerning the

6

event. (Rec. Doc. 78-1 at pp. 8-9). This shows that on the date of Chandler's injury, he was physically injured on a military base at a location that the military exercised control. Therefore, the location of the injury weighs in favor of applying the *Feres* doctrine.

### 3. Activity Being Performed when Injured

The final factor of the test is to "examine the activity being performed at the time of the injury to see if it served some military function." *Regan*, 524 F.3d at 640 (citing *Parker v. United States,* 611 F.3d 1007, 1013-15 (5th Cir. 1980)). "In determining whether the activity served a military purpose, … the ultimate evaluation is 'whether[, based on] the service-member['s] relationship to the military at the time of his or her injury[,] the occurrences causing the injury arose out of activity incident to military service.'" *Id.* (quoting *Stephenson v. Stone*, 21 F.3d 159, 162 (7th Cir. 1994)). If a solider is not subject to direct military control and engaged in recreation that has little if any oversight by the military, the court is less likely to apply the *Feres* doctrine and more likely to allow suit. *Id.* at 645.

Here, the government argues that the mandatory fun day was part of WAQ training, and that the objective of the day was to help soldiers who had been stationed in combat zones transition back to "home life." The plaintiff argues that the mandatory fun day was not associated with WAQ training because it did not meet all the formal requirements of the training, and that the mandatory fun day was purely to boost the morale of Chandler's unit. Under either argument, the court reaches the same conclusion—the suit is barred under the *Feres* doctrine.

First, based on the submitted evidence, the court finds that while the mandatory fun day did not fulfill all of the steps of WAQ training, it complemented the training. Having soldiers interact with their unit and civilian family and friends in a social setting would seemingly support the reintegration process. Even allowing the soldiers and civilians the freedom to choose from a variety of activities could complement the WAQ training objective. This objective is

7

uniquely military in nature, and injuries that arose from it would be incident to military service. While enjoying recreational time with fellow soldiers, family, and friends may not be stereotypical military activity, the court cannot substitute its own judgment for how the military should reintegrate soldiers. *See id.* at 635-36 (citing *Shearer*, 473 U.S. at 57)). Under the government's interpretation of events, the court would bar suit and dismiss the case for lack of jurisdiction because all three factors weigh in favor of applying the *Feres* doctrine.

Even if the court determined that the mandatory fun day had no purpose beyond boosting the morale of Chandler's unit and that the military exercised little to no control over the event, the court would still apply the *Feres* doctrine and bar suit because the first and second factors weigh strongly in favor of doing so. This conclusion aligns with the Fifth Circuit's discussion of *Hass v. United States*, 518 F.2d 1138 (4th Cir.1975). *Regan*, 524 F.3d at 644-45. The Fifth Circuit determined that the *Feres* doctrine was correctly applied to purely recreational activity when the activity occurred "on the base itself." *Id.* at 645. Similarly here, even if the activity was purely recreational without military control, the activity occurred on the base itself. Furthermore, Chandler was on duty the day he was injured. Accordingly, under the plaintiff's interpretation, the factors overall still weighs in favor of applying the *Feres* doctrine.

### III. CONCLUSION

Because Chandler's injury was incident to his military service, his suit is barred under the *Feres* doctrine and the court will **GRANT** the defendants' Motion to Dismiss (Rec. Doc. 70). The court will dismiss the action with prejudice for lack of subject matter jurisdiction. Also, the Motion for Hearing (Rec. Doc. 76) will be **DENIED AS MOOT.**

**New Orleans, Louisiana, this 20th day of March, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**